# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**TAMMIE JO DAY,**

      **Plaintiff,**

v.                                                                                         **Case No: 6:16-cv-208-Orl-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

# MEMORANDUM OF DECISION

Tammie Jo Day (Claimant) appeals the final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability benefits for a period of disability from February 15, 2004 through October 19, 2012. Doc. 1. Claimant argues that the Administrative Law Judge (the ALJ) erred by: 1) failing to comply with this Court's remand order and the remand order issued by the Appeals Council in considering the opinions of Claimant's treating physician, Dr. Jeremy Mirabile, M.D.; 2) failing to appropriately consider the opinions of Dr. Alvan Barber, M.D. and Dr. Frank S. Alvarez, Jr., M.D.; 3) violating Claimant's due process rights by refusing to issue Claimant's requested subpoenas for the hearing before the ALJ; and 4) failing to properly evaluate Claimant's credibility in relation to her asserted pain and limitations. Doc. 25 at 2. Claimant argues that the matter should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings. *Id*. For the reasons set forth below, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

## I. PROCEDURAL HISTORY.

On April 7, 2006, Claimant filed an application for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of February 15, 2004. R. 2360. On September 24, 2009, Claimant's applications were denied by an ALJ, who entered a decision finding that Claimant was not disabled. *Id*. On September 15, 2010, the Appeals Council remanded the case for the ALJ to consider a medical source statement and to consider whether Claimant's past work had been at the level of substantial gainful activity. *Id*. On remand, on July 25, 2012, another ALJ denied Claimant's applications, finding that Claimant was not disabled. *Id*.

The Appeals Council denied review and that decision was ultimately appealed to this Court. *See* Doc. 1, 6:14-cv-272-DAB. On August 8, 2014, the Commissioner requested remand, and the Court remanded this matter for the purpose of conducting the following additional proceedings:

> Specifically, the Administrative Law Judge (ALJ) will obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence, including, as warranted, allowing questioning of any post-hearing evidence by the claimant. The ALJ will give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations. *In so doing, the ALJ shall evaluate all opinions and explain the weight given to such opinion evidence.*

Doc. 24, 6:14-cv-272-DAB (emphasis added).

Pursuant to the Court's order of remand, the Appeals Council directed that the ALJ obtain additional evidence, give further consideration to Claimant's maximal residual functional capacity (RFC), and "evaluate all opinions . . . and explain the weight given to such opinion evidence." R.

2360-61. In particular, the Appeals Council singled-out the opinions of Dr. Barber and Dr. Mirabile, stating in its remand order as follows:

- The previous decision did not address the claimant's request to submit questions to consultative examiner Alvan Barber, M.D., in violation of HALLEX I-2-7-30(H), which provides that [i]f the Plaintiff requests an opportunity to question the author(s) of any posthearing report ... the ALJ must determine if questioning of the author is required to inquire fully into the matters at issue, and if so, whether the questioning should be conducted through live testimony or written interrogatories" HALLEX I-2-7-30(H).

- The decision also did not discuss or assign weight to three opinions from treating physician, Jeremy Mirabile, M.D. Dr. Mirabile wrote four letters expressing his medical opinion, dated July 19, 2006, October 26, 2006, January 10, 2007, and January 31, 2008 (Tr. 1231, 1235, 1656, 1689, 1701, 1884, 048). The decision only discussed and assigned weight to the last of them (Tr. 25). The regulations require that the decision both consider all the evidence and specify what weight is given to medical opinion evidence (20 C.F R. §§ 404.1527(e)(2), 416 927(e)(2)).

R. 2516.

On December 11, 2015, on remand a second time, a third ALJ entered a partially favorable decision, finding that Claimant was not disabled from the alleged onset date in 2004 through October 19, 2012, but that Claimant was disabled from October 19, 2012 through January 8, 2014. R. 2360-86. This decision ultimately became the Commissioner's final decision. This appeal followed, challenging only the determination that Claimant was not disabled prior to October 19, 2012. Doc. 25 at 1-2.

## II.  THE ALJ'S DECISION.

The ALJ found that Claimant suffered from the following severe impairments:

> a history of a seizure disorder, status post cerebral trauma, encephaloma[la]cia of the left frontal lobe, osteoarthritis of the right hip and right ankle, right shoulder pain status post humerus fracture,

asthma, chronic obstructive lung disease, borderline intellectual functioning, a history of a substance abuse disorder, a generalized anxiety disorder, a depressive disorder and post-traumatic stress disorder. Beginning on the established onset date of disability, October 19, 2012, the claimant had the following additional severe impairments: degenerative disc disease of the thoracic and lumbar spine with a severe T2 compression fracture and moderate effacement of the spinal cord, status post laminectomy fusion.

R. 2364. The ALJ also found that Claimant suffered from the following non-severe impairments: hypertension, hepatitis C, and obesity. *Id*. The ALJ found that Claimant did not meet or equal any listed impairment. R. 2364-66.

The ALJ found that, from the alleged onset date in 2004 through October 19, 2012, Claimant had the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b),[1] with the following specific limitations:

> [Claimant] could only occasionally push, pull and reach overhead or above the shoulder with her right arm. She could not climb ladders, ropes or scaffolds. She could occasionally, bend, stoop, kneel crouch, crawl or climb ramps and stairs. She had to avoid concentrated exposure to fumes, odors, dusts, gases or poor ventilation and extreme temperatures of hot, cold and humidity. She had to avoid more than moderate exposure to vibration and hazards such as unprotected heights and dangerous machinery. She was not able to operate motor vehicles in the work place. She was also limited to performing work involving simple, routine, repetitive tasks with simple instructions defined as 1-2 step tasks in a low stress stable environment with only occasional changes in the routine work setting. She could not perform work that required a production rate pace or quotas such as assembly line work. She was further limited to only occasional interaction with the public, co-workers and supervisors.

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

R. 2366. On the other hand, the ALJ found that, from October 19, 2012 through January 8, 2014, Claimant had only the following RFC: [2]

> [Claimant] had the residual functional capacity for *lifting and/or carrying up to ten pounds occasionally, standing and/or walking up to one hour and sitting up to eight hours in an 8 hour work day.* She could only occasionally push, pull and reach overhead or above the shoulder with her right arm. She could not climb ladders, ropes or scaffolds. She could only occasionally, bend, stoop, kneel crouch, crawl or climb ramps and stairs. *She was limited to frequent fingering in both upper extremities.* She had to avoid concentrated exposure to fumes, odors, dusts, gases or poor ventilation and extreme temperatures of hot, cold and humidity. She was limited to moderate exposure to vibration and hazards such as unprotected heights and dangerous machinery. She was not able to operate motor vehicles in the work place. She was further limited to performing work involving simple, routine, repetitive tasks with simple instructions defined as 1-2 step tasks in a low stress stable environment with only occasional changes in the routine work setting. She could not perform work that required a production rate pace or quotas such as assembly line work. She was limited to only occasional interaction with the public, co-workers and supervisors.

R. 2366 (emphasis added to delineate differences between the two RFC determinations). The only difference between the two RFC determinations is that the RFC for Claimant's status prior to October 19, 2012 allowed light work with no limitations in Claimant's upper extremities, and the post-October 12, 2019 RFC contained 10-pound lifting/carrying limitations, standing/walking limitations, and limitations related to Claimant's upper extremities. As will be discussed, the differences between these RFCs – particularly the limitations related to carrying/lifting and Claimant's upper extremities – are exactly the limitations at issue in this matter as they relate to the opinions of Dr. Mirabile and Dr. Barber.

---

[2] It should be noted that the ALJ did not describe Claimant's RFC as involving light work or sedentary work, instead the ALJ simply set forth the RFC in terms of Claimant's functional capacity and limitations.

Considering those RFC's, the ALJ found that, since the alleged onset date of February 15, 2004, Claimant was not capable of performing her past relevant work. R. 2382. The ALJ, however, found that Claimant was capable of performing other work in the national economy prior to October 19, 2012, including work as a marker, router, and advertising material distributor. R. 2384. All of those jobs are at the light work activity level. *Id.* The ALJ, consequently, found that Claimant was not disabled from her alleged onset date, February 15, 2004, through October 19, 2012, but became disabled on October 19, 2012. R. 2385.

## III. STANDARD OF REVIEW.

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh

the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

IV. **ANALYSIS.**

This matter must be reversed and remanded because, on remand, the ALJ failed to comply with the directives of both this Court and the Appeals Council, and, in relation to the opinions of Dr. Mirabile and Dr. Barber, the resulting decision of the ALJ is neither supported by substantial evidence, nor capable of meaningful review by this Court. In the face of a district court remand order to evaluate all opinions and explain the weight given to such opinion evidence, as well as the Appeals Council's very specific direction to weigh each of Dr. Mirabile's opinions – explicitly identified by the Appeals Council – the ALJ simply did not weigh Dr. Mirabile's opinion that Claimant had a functional limitation of not lifting more than 15 pounds. R. 1689. Further, the ALJ's decision to give Dr. Barber's opinion concerning limitations to Claimant's upper extremities "little weight" is not supported by substantial evidence. For the reasons explained below, these errors are not harmless and cannot be countenanced given the direction the ALJ had on remand.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The consideration and weighing of medical opinions is an integral part in determining the claimant's RFC. The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of

the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179. Critically, the ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Id*. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

Here, on remand, this Court directed the ALJ to "evaluate all opinions and explain the weight given to such opinion evidence." Doc. 24, 6:14-cv-272-DAB (emphasis added). Further, the Appeals Council directed, on remand, as follows:

> The decision also did not discuss or assign weight to three opinions from treating physician, Jeremy Mirabile, M.D. Dr. Mirabile wrote four letters expressing his medical opinion, dated July 19, 2006, October 26, 2006, January 10, 2007, and January 31, 2008 (Tr. 1231, 1235, 1656, 1689, 1701, 1884, 048). The decision only discussed and assigned weight to the last of them (Tr. 25). The regulations require that the decision both consider all the evidence and specify what weight is given to medical opinion evidence (20 C.F R. §§ 404.1527(e)(2), 416 927(e)(2)).

R. 2516. Thus, there are four possible sources of Dr. Mirabile's opinions, all of which the ALJ was directed to consider and weigh: the four letters from Dr. Mirabile dated July 19, 2006, October 26, 2006, January 10, 2007, and January 31, 2008. In his decision, the ALJ discussed those four letters as follows:

> As for the opinion evidence, Dr. Jeremy Mirabile rendered a few statements regarding the claimant's ability to work. On **July 19, 2006**, he indicated the claimant would require 3-6 months to stabilize (Exhibit 12F/page 20). On **October 28, 2006**, he opined the claimant would require another three months of therapy before being cleared to return to work (Exhibit 12F/page 16). The undersigned gave little weight to these opinions, as they appear to be a temporary limitation related to the claimant's shoulder injury. Additionally, it appears this impairment was beyond his area of expertise, as he indicated that he was treating the claimant for depression, anxiety and substance dependence, not her orthopedic issues.
>
> On **January 10, 2007**, Dr. Mirabile indicated the *claimant was limited to lifting no more than fifteen pounds* and anticipated she would not be able to perform full time work for two to three months until she completed physical therapy and was evaluated by an orthopedic physician (Exhibit 17F/page 63). *The undersigned gave little weight to this opinion, as the issue of ability to work is an opinion on an issue reserved to the Commissioner. Therefore, the opinion is not entitled to controlling weight or special significance* (SSR 96-Sp).
>
> In **January 2008**, Dr. Mirabile indicated the claimant was not a candidate for employment due to diagnoses of an unstable mood disorder and chronic pain syndrome. Dr. Mirabile indicated that the claimant had to start psychiatric treatment and he anticipated she would be ready for employment if she followed his medical advice (Exhibit 17F/page 30). The undersigned gave little weight to Dr. Mirabile's statement as he himself indicated that he anticipated the claimant would be ready to work within 3-6 months if she complied with treatment and this is less than twelve months. The undersigned also notes that one month later on February 25, 2008, Dr. Mirabile noted the claimant's mood was more stable on Tegretol (Exhibit 17F/page 26).

R. 2372-73 (emphasis added).

Here, Dr. Mirabile's January 10, 2007 opinion contained a functional, 15-pound lifting restriction. *Id.* And in her brief, Claimant points out that, while Dr. Mirabile's opinions that Claimant could not return to work may have been opinions reserved to the Commissioner, a lifting

restriction was not such an opinion. Doc. 25 at 25-26. The Court agrees. Thus, the Court cannot determine whether the ALJ either (1) completely failed to weigh the functional lifting restriction or (2) erroneously gave it little weight because it was "an opinion on an issue reserved to the Commissioner." In either scenario, though, the ALJ erred. It is true that the ALJ is not required to reflexively cite to every medical opinion or piece of evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (quotations omitted). But here the ALJ was directed on remand to consider not only all of the opinions in this case, but to specifically consider all of the opinions contained within the four letters authored by Dr. Mirabile. By not weighing the lifting restriction, the ALJ failed to comply with the remand orders of this Court and the Appeals Council, and concomitantly failed to discharge his obligations under the law. *See* 20 C.F.R. §§ 404.977(b), 416.1477(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").

Further, in the Commissioner's brief (Doc. 32 at 13-18), the Commissioner never directly acknowledged or rebutted Claimant's argument that the ALJ failed to weigh the 15-pound lifting limitation contained within Dr. Mirabile's January 10, 2007 letter. The Court takes the Commissioner's avoidance of this issue – so directly raised by Claimant, the Appeals Council, and this Court – as a tacit admission that the ALJ erred in failing to consider that opinion. Further, nowhere does the Commissioner assert that any error by the ALJ was harmless. *See* Doc. 32.

Regardless, this error is not harmless. The lifting restriction is in conflict with the RFC. In the RFC, from the alleged onset date through October 19, 2012, the ALJ limited Claimant to light work. By limiting Claimant to light work, the ALJ found that Claimant could lift and carry objects up to 20 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Had the ALJ credited Dr. Mirabile's lifting restriction and taken that opinion into account in the RFC it may have further limited the possible jobs available in the national economy that Claimant could have performed prior to October 19, 2012. The point is, by not weighing – or improperly discounting – Dr. Mirabile's opinion, the ALJ's decision is not capable of meaningful review by this Court.

Further, in this particular case, given the extensive exertional and non-exertional limitations the ALJ assessed in the RFC due to Claimant's multiple, severe impairments, a determination that Claimant could not perform light work would have resulted in almost no available jobs in the national economy. In his decision, the ALJ identified three jobs in the national economy that Claimant could have performed prior to October 19, 2012, considering the assigned RFC for that time period. R. 2384-85. Those three jobs were based upon both the RFC and the vocational expert's testimony at the September 15, 2015 hearing. R. 2479-94. In the ALJ's decision, no possible jobs were identified that involved a sedentary level of work. However, this issue did come up at the September 15, 2015 hearing. There, the vocational expert testified that, given the extensive limitations in the RFC, if Claimant were further limited to a sedentary level of work, there would only be one possible job in the national economy that Claimant could perform – cutter and paster. R. 2487.

However, even Claimant's ability to perform that sedentary-level job is in doubt, because, as testified to by the vocational expert, that job required frequent handling. R. 2501-02. Dr. Barber, an examining medical consultant, opined, among other things, that Claimant could

frequently finger, but had occasional limitations for the remaining activities involving the use of her right hand, including handling. R. 2378; 2282. According to Dr. Barber, Claimant is right hand dominant. R. 2282. The ALJ gave that opinion of Dr. Barber "little weight" because, according to the ALJ, the limitations assessed in relation to Claimant's upper extremities "are inconsistent and not supported by [Dr. Barber's] physical exam findings, the objective imaging studies or the longitudinal treatment records." R. 2378. Further the pre-October 19, 2012 RFC contained no limitations to Claimant's upper extremities – one of the few differences between the two RFCs. Yet, as summarized by the ALJ, Dr. Barber's physical examination found that Claimant "could not perform finger to nose or rapid alternating hand movements with the right hand. She could not open and close a door with the right hand, and she was not able to button clothes or pick up small objects with the right hand." R. 2378; *see* R. 2264. Thus, the ALJ's assertion that Dr. Barber's functional limitations related to Claimant's right hand "are inconsistent and not supported by his physical exam findings" is, itself, not supported by substantial evidence. Indeed, Dr. Barber's physical examination findings detailed Claimant's limitations in her ability to use her right hand – she cannot perform finger movements, button her clothes, or pick up small objects. R. 2276. Further, to the extent that the ALJ is relying upon "the objective imaging studies or the longitudinal treatment records," those records are not identified, cited or discussed, and the ALJ's passing and conclusory reference to such evidence, in a record totaling in excess of 4,000 pages, makes his reliance upon those records, and subsequent decision as to Dr. Barber's opinion, not susceptible to meaningful review by this Court. Further, it should be noted that Dr. Barber opined that Claimant can occasionally lift and carry up to 10 pounds, and can *never* lift or carry 11 pounds or more. R. 2280. This is an opinion even more limiting than Dr. Mirabile's lifting restriction, and the ALJ failed to discuss or weigh that opinion in any way whatsoever. *See* R. 2378.

The issue with regards to Dr. Barber is further compounded by the ALJ's denial of Claimant's request to subpoena Dr. Barber – also considering this Court's remand order to obtain additional evidence and the remand order of the Appeal Council with respect to Dr. Barber. Indeed, the Appeals Council directed on remand as follows with respect to Dr. Barber:

> The previous decision did not address the claimant's request to submit questions to consultative examiner Alvan Barber, M.D., in violation of HALLEX I-2-7-30(H), which provides that [i]f the Plaintiff requests an opportunity to question the author(s) of any posthearing report ... the ALJ must determine if questioning of the author is required to inquire fully into the matters at issue, and if so, whether the questioning should be conducted through live testimony or written interrogatories" HALLEX I-2-7-30(H).

R. 2516. Here, Claimant had requested to subpoena numerous witnesses to the hearing, including Dr. Barber. The ALJ, though, denied that request, stating, in part, that the record evidence "provides more than sufficient information regarding the claimant's manipulative functioning." The Court does not find that the ALJ's explanation, on its face, was insufficient as a matter of law. *See Tagle v. Astrue*, 279 F. App'x 827, 829 (11th Cir. 2008); *Jones v. Astrue*, 2010 WL 2465412, at *5 (S.D. Ga. May 24, 2010). However, the combination of unique facts in this case – including the directions on remand to the ALJ and the Court's determination that the ALJ's decision to reject Dr. Barber's opinion as to Claimant's manipulative limitations was not supported by substantial evidence – compound the harm caused by refusing to allow Claimant to subpoena Dr. Barber to testify at the hearing.

Here, the ALJ had specific and direct instructions on remand from this Court and the Appeals Council. By failing to discuss or weigh the functional lifting limitation contained within Dr. Mirabile's January 10, 2017 opinion, the ALJ erred. Similarly, the ALJ erred in weighing Dr. Barber's opinions concerning limitations to Claimant's upper extremities. Accordingly this case must be reversed and remanded so that the ALJ can comply with the orders of this Court and the

Appeals Council, and apply the correct legal standards to the opinions of Dr. Mirabile and Dr. Barber.

The Court finds that the foregoing issues are dispositive of this appeal, and, thus, there is no need to address Claimant's remaining assignments of error. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors). That said, the Court finds that the errors identified above were compounded by the ALJ's decision to prevent Claimant from subpoenaing Dr. Barber to testify at the hearing on remand. Accordingly, on remand, the ALJ is directed to allow Claimant an opportunity to supplement the record with testimony from Dr. Barber. The ALJ is also directed to consider all of the medical opinions contained within the record, including Dr. Barber's opinions concerning Claimant's lifting and carrying limitations. R. 2280.[3]

## V. REMEDY

Claimant requests that this case be remanded for an award of benefits. Doc. 25 at 35. The Court may remand a social security disability case for an award of benefits where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993), or where the claimant has suffered an injustice, *see Walden*, 672 F.2d at 840. Claimant argues that she has suffered an injustice and that the record establishes disability without doubt. Doc. 25 at 35-42. Although Claimant is right to be frustrated with the Commissioner (as was this Court) and there is no doubt that this case has

---

[3] On this record, the undersigned finds no due process violation, no error with the ALJ's credibility determination, and no error with his consideration of the opinions of Dr. Alvarez, although, on remand, the ALJ must reassess the entire record. *See Diorio*, 721 F.2d at 729.

wound its way through the administrative system for over ten years, the Court is not persuaded that remand for benefits is the appropriate remedy. Here, Claimant is appealing a partially favorable decision, and the Commissioner has already determined that Claimant became disabled on October 19, 2012. This appeal is limited to the approximately eight years prior to that date. During that time, Claimant suffered a number of severe impairments and functional limitations, many of which were taken into account by the ALJ in his decision. And the Commissioner has not simply litigated this case without regard to Claimant's claims – to date, the remands in this case have come from the actions of the Commissioner, both at the Appeals Council level and by seeking a voluntary remand from this Court in 2014. Thus, at least up to this point, given the Commissioner's attempts to address errors along the way and given the partially favorable decision on voluntary remand, the Court cannot say that the actions of the Commissioner have resulted in an injustice to Claimant. Further in light of the evidence in the record, the Court finds that the essential evidence does not establish disability beyond a doubt. As has already been discussed, remand in this case primarily is due to the ALJ's failure to follow the remand orders and the resulting inability for this Court to meaningfully review the ALJ's decision. Therefore, this case should be reversed and remanded for further proceedings so the ALJ may address the issues discussed in this decision.

Finally, on remand, the Court denies Claimant's request to direct expedited consideration or direct that the case be assigned to another ALJ; this Court saw no evidence that the ALJ did anything that would warrant such an order. *See Nowells v. Heckler*, 749 F.2d 1570, 1571 (11th Cir. 1985) (refusing to judicially impose strict time limits on the Commissioner to conduct a hearing on remand).

## VI. CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 21, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Guy Koster
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Desoto Bldg., Suite 400
8880 Freedom Crossing Trail
Jacksonville, FL 32256-1224